**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CASTLE CO-PACKERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-459 |
| | ) | Judge Nora Barry Fischer |
| v. | ) | |
| | ) | |
| BUSCH MACHINERY, INC., and MICK MOST, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.      INTRODUCTION

In this commercial dispute, Pennsylvania-based Plaintiff Castle Co-Packers, LLC ("Castle") alleges various tort and breach of contract claims against Arizona-based Defendants Busch Machinery, Inc. ("Busch") and Mick Most ("Most") relating to the sale of a packaging machine.  (Docket No. 1).  Presently before the Court are Defendants' Motion to Dismiss or Motion to Transfer for Improper and Inconvenient Venue, (Docket No. 20) Plaintiff's Brief in Opposition, (Docket No. 23) and Defendant's Reply (Docket No. 27).  Defendants contend that this case should be dismissed or transferred to the United States District Court for the District of Arizona based on a forum selection clause in its invoices.  (Docket Nos. 20; 27).  Castle argues that the forum selection clause does not apply and that the matter should remain in this Court. (Docket No. 23).  After careful consideration of the parties' arguments and for the following reasons, Defendants' Motion is granted, in part, and denied, in part.  The Motion is granted to the extent that this Court will exercise its discretion pursuant to 28 U.S.C. § 1404(a) and transfer this

matter to the United States District Court for the District of Arizona, forthwith.

## II.   BACKGROUND

Although this case arises from an interstate transaction between Busch and Castle, the negotiations were handled by Most of Busch in Arizona and a Kentucky-based agent, Darin Dillow ("Dillow"), of Drink Sword, on behalf of Castle.  (Docket Nos. 1 at ¶¶ 4-6; 23-1).  In May of 2021, Dillow contacted Most to purchase a YS-6100D 8 Lane Packing Machine (the "Equipment") from Busch.  (Docket No. 23-1 at 1).  The negotiations between Most and Dillow included email communications and the exchange of several estimates over the next few months.  On May 25, 2021, Most prepared and emailed an "estimate," to Dillow, which included the Equipment's required parts; a total cost of $121,822.25; FOB "Tucson, AZ"; and that shipping would be "Billed Separately, Due Prior to Ship."  (Docket No. 23-1 at 1, 6).  The bottom of the estimate reads as follows:

> This is your Estimate
> Payment terms:
> 50% Down Payment with Order
> 25% Prior to Ship from Factory (to Busch Machinery)
> 25% Prior to Ship to Customer

(*Id.* at 6).  Along with the estimate, Most wrote "Here are the numbers. . . These numbers should be solid for you to use in order to move forward. . . Let me know your thoughts, questions or concerns please."  (Docket No. 27-6 at 1).

On May 28, 2021, Busch's account manager, Will Perry ("Perry") sent a revised estimate to Dillow in an email, stating:

> Please see attached updated Estimate (3992); I have revised the terms per [Most].

Since we are shipping direct to you, the shipping cost will be the difference between shipping to Busch Machinery and shipping to your location.

Please let me know if you have any questions on the Estimate, thanks!

(Docket No. 23-1 at 8).  The terms in the second estimate appear the same as they do in the original estimate.  (*Id.* at 6; 9).

The negotiations between Busch and Dillow continued and on June 24, 2021 Busch updated the "bag length" term from the prior estimates at Dillow's request, and Perry sent a third estimate to Dillow.  (*Id.* at 2; 11-14).  On June 25, 2021, Dillow forwarded this email to Brian Dworkin ("Dworkin"), the owner and president of Castle, saying "Here is the updated version of the quote with the extended web length that we are looking for."  (*Id.* at 11).  Aside from the changed bag length, the terms appear the same as they do in the prior estimates.  (*Id.* at 6; 9; 11).

There was no further contact between the parties until almost two full weeks later, on July 7, 2021, when Castle sent Busch a check for $60,911.13 without a purchase order.  (*Id.* at 2; 31-32).  Most explains that Castle's payment was unexpected as Busch did not consider any of the estimates to be offers and never requested payment.  (Docket No. 27-1 at 2).  On July 12, 2021, in response to Castle, Perry emailed an invoice to Dillow reflecting satisfactory payment that included a forum selection clause (the "Clause") which states: "Jurisdiction: The legal jurisdiction for any action against Busch Machinery, Inc. is Pima County in the State of Arizona."  (Docket No. 20-3).  The invoice also reflected that the Equipment would be shipped by "Ocean Freight," "FOB China."  (*Id.*).  Dillow immediately forwarded Perry's email with the paid invoice attached to Dworkin and simply said "FYI."  (Docket No. 23-1 at 16).  Neither Castle nor Dillow responded to these emails and no objections were initially lodged to the terms.

3

On July 20, 2021, Most contacted Dillow to propose substitution of the replacement parts for the Equipment, and to discuss shipping, customs and tariff costs. (Docket No. 27-3 at 4). Dillow expressed that Castle "want[s] the machine and the parts from the original quote," and proceeded to negotiate the proposals through email and a phone call. (*Id.* at 3-4). During the phone call, the parties agreed that the substitute parts were acceptable and Busch would not add any new shipping or customs charges. (*Id.*; Docket No. 27-1 at 1). No objections were raised to the Clause during these negotiations. (Docket No. 27-3).

On December 10, 2021, Busch sent a second invoice to Castle seeking $30,455.12 representing the 25% of the purchase price due prior to shipping. (Docket Nos. 20-5). This Invoice also included the Clause. (*Id.*). The payment was not made immediately and the Equipment had not been shipped as of January 10, 2022. At this point in time, all negotiations had taken place between Busch/Most in Arizona and Dillow in Kentucky, on behalf of Castle, and the principals of the two companies had not been in direct contact. On January 10, 2022, Dillow introduced Most and Dworkin to each other for the first time over an email, writing, "I believe it would be beneficial for both of you to jump on a call and have a discussion about where we are at to ensure that everyone is on the same page etc." (Docket Nos. 20-5 at 2).

The following day, Most emailed both Dillow and Dworkin and asked that Castle pay the next 25% prior to the Equipment's shipment from the factory in China to Busch, "per [the] agreement." (*Id.* at 2). Dillow, on behalf of Castle, responded through email on the same day, explaining that Castle was under the impression that the Equipment was being manufactured directly by Busch in the United States. (Docket No. 27-5 at 1-2). In support, Dillow noted

4

instances that implied Busch would be manufacturing the equipment in Arizona.  (*Id*.).  Dillow explicitly referenced the Clause in this email, writing that, "[e]ven on the bottom of the actual paid invoice in the disclaimer section, it shows Jurisdiction as being. . . Pima County in the State of Arizona"; hence, he did not object to its inclusion at this time.  (*Id*. at 1).  Castle did not make its second payment until May 3, 2022, when the Equipment was scheduled to be shipped to Castle in Pennsylvania.  (Docket No. 23-1 at 3).  Busch sent two additional invoices, one on May 23, 2022, for costs relating to an "On-site Engineer Visit," and another on June 2, 2022 for shipping.  (*Id*. at 37-38).  Both of these invoices included the Clause and neither Castle nor Sword objected to its inclusion at either time.  (*Id*.).

At some point in early June, 2022, the Equipment was shipped to Castle in Latrobe, Pennsylvania.  (Docket No. 1 at ¶ 42).  Castle found numerous defects with the Equipment and notified Defendants as to same.  (*Id*. at ¶¶ 44-45).  Most and other Busch employees traveled to Latrobe in an effort to fix the problems with the Equipment.  (Docket No. 23-1 at 37; 42).  The defects have not been rectified, and Castle incurred substantial costs in attempting to make the Equipment operable.  (Docket No. 1 at ¶¶ 47-48).  The Equipment currently sits in Castle's facility in Latrobe, Pennsylvania; Castle has not made the final 25% payment to Busch; and the matter remains unresolved.  (*Id*. at ¶ 49;  Docket No. 23 at 7).

III.    PROCEDURAL HISTORY

Castle initiated this lawsuit against Busch and Most on March 16, 2023.  (Docket No. 1). On May 9, 2023, the Court denied a previously filed motion to dismiss by Defendants, without prejudice, and directed the parties to confer prior to filing dispositive motions pursuant to Section

II.N of this Court's Practices and Procedures. (Docket No. 14).   On June 2, 2023, Defendants renewed their Motion to Dismiss after a failed meet and confer.   (Docket No. 20).   Plaintiff submitted a Brief in Opposition on June 23, 2023, and Defendants filed a Reply on July 14, 2023. (Docket Nos. 23; 27).   The parties have not sought further briefing nor requested argument. Accordingly, the matter has been fully briefed and is now ripe for disposition.

IV.    LEGAL STANDARDS

Defendants seek to enforce the forum selection clause and have alternatively moved to dismiss or transfer venue of this action based on Fed. R. Civ. P. 12(b)(3), 28 U.S.C. §§ 1404(a) and 1406(a) and the doctrine of *forum non conveniens*.   (Docket No. 20).   The Supreme Court has held that "[a]lthough a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)."   *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013).   Hence, in the interests of judicial economy, the Court focuses its inquiry on the discretionary transfer statute, § 1404(a), rather than addressing all of the alternative theories.   *See Armstrong Dev. Properties, Inc. v. Ellison*, Civ. A. No. 13-1590, 2014 WL 1452322, at *4 (W.D. Pa. Apr. 14, 2014).

Under section 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."   28 U.S.C. § 1404(a).   It is well established that Defendants bear the burden of proof to demonstrate that a discretionary transfer of venue is appropriate and that this Court retains "broad discretion" to transfer venue when justice so requires.   *See Jumara v. State Farm Ins. Co.*,

55 F.3d 873, 883 (3d Cir.1995); *see also Ogundoju v. Attorney General of U.S.*, 390 F. App'x 134, n. 2 (3d Cir.2010)).

Ordinarily, a § 1404(a) motion requires the Court to evaluate both private and public interest factors. *Atl. Marine Const. Co.*, 571 U.S. at 52. However, where the parties have agreed to a valid forum-selection clause, the Court must only consider the public interest factors because the parties have effectively waived "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Id.* at 67. The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879-880.

The party seeking to avoid enforcement of an otherwise valid forum selection clause bears the burden to demonstrate "that the public interest factors *overwhelmingly* disfavor transfer." *Atl. Marine Const. Co.*, 571 U.S. at 67 (emphasis added)); *see also*, *Kilduff v. Jayco, Inc.*, No. 5:23-CV-00470-JMG, 2023 WL 3361187, at *2 (E.D. Pa. May 10, 2023) (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)) ("the plaintiff 'bear[s] the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer.'"); *Caballero v. Healthcare Res., Inc.*, No. 2:17-CV-00228-NBF, 2017 WL 2909693, at *1 (W.D. Pa. July 7, 2017) (writing that it is the moving party's burden to show "(1) the clause was the result of fraud or overreaching; (2) enforcement of the clause would violate strong public policy of the forum; or (3) the forum selected is unreasonable."). Where the parties have agreed to a valid forum-selection

clause, "a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co.* 571 U.S. at 62. *See also MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x. 844, 847–88 (3d Cir. 2003) (quoting *Stewart Org. Inc.,* 487 U.S. 22 at 33 (Kennedy, J., concurring) ("'a valid forum selection clause [should be] given controlling weight in all but the most exceptional case.'"); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)) (stating "[f]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown to be unreasonable under the circumstances); *Polytek Dev. Corp. v. 'Doc' Johnson Enterprises*, 532 F. Supp. 3d 243, 248 (E.D. Pa. 2021) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16-17 (1972)).

V.    DISCUSSION

As noted, Defendants argue that the Clause should be enforced and that this matter should be transferred to the District of Arizona. (Docket Nos. 20; 27). Castle lodges several objections to the transfer and argues that the Clause is not part of their Agreement, contains permissive rather than mandatory language, and that Most cannot enforce the Clause as he is not a party to the Agreement. (Docket No. 23). Having considered the parties' positions, the Court agrees with Defendants and will enforce the Clause and transfer this matter. The Court's rationale follows, starting with its analysis of the formation of the contract in this case.

A.  *Contract Formation*

At the outset, the Court notes that both parties apply Pennsylvania law in their briefs. (Docket Nos. 20; 23). Given same, the Court will not engage in a choice-of-law analysis and will likewise apply Pennsylvania law for the purposes of the pending motion. *See 84 Lumber Co., L.P.*

*v. Bryan Const. Co.*, Civ. A. No. 2:09-1030, 2011 WL 666209, at *5 (W.D. Pa. Feb. 14, 2011)

(citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("In this case,

the parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage

in a choice of law analysis.").

Contracts for the sale of goods in Pennsylvania are governed by the Pennsylvania Uniform

Commercial Code ("UCC"). *Commc'ns Supply Corp. v. Iron Bow Techs., LLC*, 529 F. Supp. 3d

423, 433 (W.D. Pa. 2021); 13 Pa. Stat. and Cons. Stat. Ann. § 2101, *et seq.* (West). In situations

such as this case where there is no formal agreement between the parties, § 2207(c) controls.

> **(c) Conduct establishing contract.**--Conduct by both parties which
> recognizes the existence of a contract is sufficient to establish a
> contract for sale although the writings of the parties do not otherwise
> establish a contract. In such case the terms of the particular contract
> consist of those terms on which the writings of the parties agree,
> together with any supplementary terms incorporated under any other
> provisions of this title.

13 Pa.C.S. § 2207. A contract is formed where 1) "both parties manifested an intention to be

bound by the agreement;" 2) "the terms of the agreement are sufficiently definite to be enforced;"

and 3) there is consideration. *ATACS Corp. v. Trans World Commc'ns, Inc.,* 155 F.3d 659, 666 (3d

Cir.1998). For both parties to manifest an intention to be bound, there must be a "meeting of the

minds," or "concurrence of both parties to the agreement." *Fabian v. Shenkan*, 443 F. Supp. 3d

590, 595 (W.D. Pa. 2020), *aff'd sub nom. Langer v. Cap. One Auto Fin.*, 855 F. App'x 828 (3d Cir.

2021). Once a contract is formed, any additional, material terms are to be construed as proposals

for addition to the contract that require assent by both parties to be enforceable. 13 Pa.C.S § 2207;

9

*Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (writing, "parties create an enforceable contract when they agree on its essential terms and manifest an intent that the terms bind them."). "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." *Polytek Dev. Corp.* 532 F. Supp. 3d 243 at 249 (quoting Restatement 2d of Contracts § 19(1)). "Forum selection clauses are material terms to a contract," that require such assent. *CECG, Inc. v. Magic Software Enterprises, Inc.*, 51 F. App'x 359, 364 (3d Cir. 2002).

The parties agree that they entered into a contract for the sale of the Equipment, but they dispute when the contract was formed and whether the forum selection clause is part of the agreement. (Docket Nos. 20; 23). To that end, Defendants argue that the contract was not formed until they submitted the first invoice to Castle which contained the Clause because they do not do business based on estimates and do not consider estimates to be binding contracts. (Docket No. 20 at 3). Plaintiff maintains that the contract was formed once it submitted the 50% down payment, because the final estimate identified the Equipment and the parties' basic understanding of payment and delivery terms for same. (Docket No. 23 at 3). Plaintiff, thus, believes that the Clause is not enforceable because it is an additional term that arose after the contract was formed. (*Id.*). In this Court's estimation, the totality of the circumstances demonstrate that the forum selection clause is valid and enforceable. The parties dispute whether the Third Estimate sent by Busch, Castle's provision of the 50% down payment, or the first Invoice sent by Busch constitute an offer in this case. (Docket Nos. 20, 23, 27). Relevant here,

> Section 2206 of Pennsylvania's Uniform Commercial Code ("UCC") provides that "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium

> reasonable in the circumstances." An offeree can accept an offer without a signed writing as long as the offer does not "unambiguously indicate[ ] that a signed writing [is] a prerequisite to the formation of a contract." In addition, section 2206 states that "an order or offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods.

*Eureka Res., LLC v. Howden Roots LLC*, 553 F. Supp. 3d 233, 242–43 (M.D. Pa. 2021) (citing 13 Pa.C.S. 2206).  With that said,

> "The general rule is price quotations are not offers, but rather are mere invitations to enter into negotiations or to submit offers." In fact, "[t]he buyer's purchase order—which sets such terms as product choice, quantity, price, and terms of delivery—is usually the offer." Nevertheless, a price quotation may constitute an offer where it is sufficiently detailed, or where it is reasonably apparent from the quotation that assent "is all that is needed to ripen the offer into a contract."

*Eureka Res., LLC*, 553 F. Supp. 3d at 241-42 (internal quotations omitted).

Applied here, the Court holds that Busch's estimates cannot be considered offers, as each was clearly marked "ESTIMATE," and the estimates themselves lacked specificity on crucial terms such as shipment costs that were later negotiated.  (Docket Nos. 27-1 at 2; 27-3).  *Eureka Res., LLC*, 553 F. Supp. 3d at 242, (writing that evidence that the seller did not actually intend to make an offer through a quotation may include "the quotation lacks specificity. . . [and] further negotiations on essential terms take place.").  While Dworkin states that Castle viewed the Third Estimate as an offer, he had no direct communication with Most at that time and his intermediary, Dillow, referred to the estimate as a "quote," in the contemporaneous email to him.  (Docket Nos.

11

23-1 at 11; 27-3 at 3-4).   Additionally, Castle submitted a check to Busch for half the purchase price of the Equipment without a purchase order 13 days after receiving the Third Estimate which clearly states "[t]his is your Estimate; Payment terms; 50% Down Payment with Order," (Docket No. 23-1 at 1, 6).   A surprise payment after a nearly two-week delay cannot result in a "meeting of the minds."   Hence, the Court concludes that the Third Estimate is not an offer capable of acceptance.

Moving on, as noted above, the buyer's purchase order typically becomes the offer in such a scenario, but Castle admits that it never sent a purchase order and apparently forwarded a check to Busch without any further communications.   At most, Castle's provision of the down payment constitutes an offer under the terms set forth in the Third Estimate.   However, in response to the payment, Busch sent Castle an invoice containing the Clause and therefore added, a new, material term.   Under Pennsylvania law, a material alteration acts as a counteroffer and requires assent of the offeree.   *CECG, Inc.*, 51 F. App'x at 364; *Beard v. Helman*, 595 F. Supp. 3d 332, 342 (M.D. Pa. 2022).   The Court believes that Castle's actions after receiving the invoice constituted an acceptance of Busch's counteroffer, which included the Clause dictating that any actions against Busch would be brought in Pima County, Arizona.   To that end, Busch provided four (4) separate invoices after Castle paid its 50% down payment, each of which plainly included the Clause. (Docket Nos. 20-3; 20-4; 20-5; 20-6).   After Castle received two of these invoices, Busch proposed other, material changes, such as substituting replacement parts for the Equipment and shifting shipping, customs, and tariff costs.   (Docket No. 27-3).   Castle raised objections and negotiated with Busch as to the proposed terms and Dillow specifically acknowledged the Clause while

12

raising concerns about the location of the manufacturer.  (Docket Nos. 23-1 at 3; 27-3 at 4).

Following the negotiations, Castle submitted a second payment.  (Docket Nos. 23-1 at 3; 27-3).

The acknowledgement of the Clause in tandem with this second payment constitutes acceptance

of the term, particularly where Castle raised objections to the other proposed changes.  *See*

Restatement 2d of Contracts § 19(1) ("The manifestation of assent may be made wholly or partly

by written or spoken words or by other acts or by failure to act."); *see also Polytek Dev. Corp.*,

532 F. Supp. 3d at 249-250 (finding that a forum selection clause contained in a series of invoices

arising after contract formation was enforceable based on the parties' conduct.).

   For these reasons, the Court concludes that the Clause is part of the agreement between the

parties.

### B.  The Clause is Mandatory and Enforceable by Most

   Castle next objects that the Clause contains permissive, rather than mandatory, language

which merely authorizes venue in Pima County, Arizona and that Most cannot enforce the Clause

because he is not a party to the Agreement between Castle and Busch.  (Docket No. 23).

Defendants continue to advocate that the case be transferred pursuant to the Clause.  (Docket Nos.

20; 27).

   It is this Court's opinion that the Clause is mandatory and that Most may enforce it given

his role as the owner of Busch and his direct involvement in this matter.  On the former point, "[a]

mandatory forum selection clause provides venue is proper only in the identified forum. A

permissive forum selection clause authorizes venue in the selected forum." *CentiMark Corp. v.*

*1901 Gateway Holdings, LLC*, Civ. A. No. 21-426, 2021 WL 4245088, at *5 (W.D. Pa. Sept. 17,

2021) (citing *Wall v. Corona Cap., LLC*, 221 F. Supp. 3d 652, 658 (W. D Pa. 2016)).  While words such as "exclusive" are indicative of the mandatory nature of a forum selection clause, the Court interprets the language as a whole.  *Id.*  As to the latter issue, "[i]n the Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if the party. . . is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound." *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 708 (E.D. Pa. 2014).

Here, the Clause states that, "[t]he legal jurisdiction for any action against Busch Machinery, Inc. is Pima County in the State of Arizona." (Docket No. 20-3 at 1).  The phrase "any action against Busch," along with the verb "is" negates the possibility of an action against Busch being brought anywhere other than the "legal jurisdiction" of Pima County, Arizona[1], and thus the provision is mandatory.  *See CentiMark Corp.*, 2021 WL 4245088, at *5 (finding that use of word "shall" included mandatory language).  The email communication from Dillow acknowledging the Clause likewise indicates his understanding that Plaintiff was agreeing that the jurisdiction for any action against Busch would be in Arizona.  (Docket No. 27-5 at 1 ("Even at the bottom of the actual paid invoice in the disclaimer section, it shows Jurisdiction as being Busch Machiner[y] in Pima County in the State of Arizona.").  Further, although Most is not a party to the Invoices and not named in the Clause, he is the owner of Busch and was directly involved in the sale of the

---

[1]     Although not raised by the parties, the Court notes that transfer to the United States District Court for the District of Arizona is proper despite the language that the "legal jurisdiction. . . is Pima County in the State of Arizona." Transfer is not available when a forum selection clause specifies a non-federal forum. *Salovaara v. Jackson Nat. Life Ins. Co.,* 246 F.3d 289, 298 (3d Cir. 2001).  Here, the Clause does not limit jurisdiction to state court; rather, it requires only that the Court sit in Pima County, Arizona.  *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 244 (E.D. Pa. 2007).  The Court takes judicial notice that the United States District Court for the District of Arizona sits in multiple cities, including Tucson, Arizona, in Pima County.  *See Southerland v. St. Croix Taxicab Ass'n*, 4 V.I. 397, 405, 315 F.2d 364, 367 (3d Cir. 1963) (finding that a geographical fact may be judicially noticed).

Equipment to Castle such that it is reasonably foreseeable that the Clause would also pertain to any action against him. *See AAMCO Transmissions*, 42 F. Supp. 3d at 708. Accordingly, Plaintiff's objections are overruled and the Court holds that the Clause is enforceable by both Defendants.[2]

### C. Application of Public Interest Factors

The Court's final inquiry is to consider and apply the public factors under *Jumara* and *Atlantic Marine*. To reiterate, it is Castle's burden to demonstrate that the public interest factors overwhelmingly disfavor a transfer. *Atl. Marine Const. Co.*, 571 U.S. at 67. The analysis is straightforward in this case given that Castle has conceded that most of the public factors are "at most neutral" and that "there is no indication that Castle's otherwise routine contract and tort claims could not be heard by Arizona's federal and/or state courts." (*Id.* at 15-16).

It is the Court's opinion that the first, second, and fourth factors are neutral as to transfer, as there is no dispute that a judgment rendered in Arizona would be enforceable against the

---

[2] The Court notes that it would reach the same result even if it determined that the Clause is permissive. Where there is a permissive forum selection clause, the Court must also consider the following private factors: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879 (cleaned up). The only factor that weighs against transfer is Plaintiff's forum preference but that is given little weight due to its acknowledgement of the forum selection clause. Defendants' forum preference and the location of where the claim arose, particularly the place of contracting, weigh in favor of transfer. The remaining factors are neutral. All told, it is this Court's opinion that because Castle reached out to Busch, a company in Arizona, to do business, and lodged no objections to the Clause, it has "freely contractually chosen an appropriate venue" in Arizona. *Id.* at 880. It is also undisputed that the contract negotiations involved Busch in Arizona and Dillow in Kentucky and that Busch had not even been introduced to Castle's principal in Pennsylvania until approximately 7 months later, and they continued doing business without objecting to multiple invoices containing the Clause. The Court alternatively finds that even if the language is deemed permissive, the private and public factors weigh in favor of transferring this matter to Arizona and therefore exercises its broad discretion to transfer under section 1404(a). *Id.* at 880.

Arizona-based Defendants; the parties/relevant witnesses are located throughout the country in Pennsylvania, Arizona, and Kentucky,  such that costs associated with travel will exist regardless of venue, and; Arizona certainly has an interest in resolving cases involving its own citizens and corporations.  *Jumara*, 55 F.3d at 879-880.  The third factor weighs only slightly against transfer. (*Id.*)  As of 2022, the District of Arizona has roughly 14% more pending cases that this District, and neither court has judicial vacancies at this time.  *See* https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2022/03/31 (last accessed August 17, 2023); https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last accessed August 17, 2023).  As to the final factor, even if Pennsylvania law is ultimately applicable to the claims and defenses in this case, a transfer is still appropriate because "Federal judges are frequently called upon to apply the laws of other states." *McLaughlin v. GlaxoSmithKline, L.L.C.*, No. CIV.A. 12-3272, 2012 WL 4932016, at *8 (E.D. Pa. Oct. 17, 2012); *see also Polytek Dev. Corp.*, 532 F. Supp. 3d at 248 ("To rise to the level of unreasonableness, the objecting party must show more than 'mere inconvenience or additional expense.'") (citation omitted).  In sum, Plaintiff has failed to meet its heavy burden to show that the public interest factors overwhelmingly disfavor transfer, and the Court believes that a transfer is appropriate.  *Atl. Marine Const. Co.*, 571 U.S. at 67.

VI.    CONCLUSION

Based on the foregoing, Defendants' Motion is granted, in part, and denied, in part. Defendants' Motion is granted to the extent that the Court will exercise its discretion under 28 U.S.C. § 1404(a) and transfer the case to the District of Arizona.  Defendants' Motion is otherwise

denied, as moot.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  August 18, 2023

cc/ecf:  All counsel of record

17